Virginia JOHNSON, Plaintiff–
Appellant,

v.

The BON–TON DEPARTMENT
STORES, INC., Defendant–
Appellee.

No. 06–5279–cv.

United States Court of Appeals,
Second Circuit.

May 21, 2008.

Laura C. Doolittle (Courtney G. Scime, on the brief), Law Offices of Eugene C. Tenney, Buffalo, NY, for Plaintiff–Appellant.

Thomas P. Kawalec (Michael M. Chelus, on the brief), Chelus, Herdzik, Speyer, Monte & Pajak, P.C., New York, NY, for Defendant–Appellee.

PRESENT: Hon. CHESTER J. STRAUB and Hon. REENA RAGGI, Circuit Judges, Hon. SIDNEY H. STEIN, District Judge.*

## SUMMARY ORDER

Plaintiff–Appellant Virginia Johnson ("Johnson") appeals from an order of the United States District Court for the Western District of New York (Hugh B. Scott, *Magistrate Judge* ), entered on October 18, 2006 and the resulting judgment dated October 19, 2006, granting the motion of Defendant–Appellee The Bon–Ton Department Stores, Inc. ("Bon–Ton") for summary judgment, and denying Johnson's cross-motion for summary judgment and her motion to strike Bon–Ton's defenses as a sanction pursuant to Federal Rule of Civil Procedure 26(g) for submitting an allegedly false expert report.[1] *See Johnson v. The Bon–Ton Dep't Stores, Inc.*, No. 05 CV 170, 2006 WL 2990352 (W.D.N.Y. Oct.18, 2006). We assume the parties' familiarity with the factual background, procedural history, and issues on appeal. For the reasons that follow, we reverse the grant of summary judgment in favor of Bon–Ton, affirm the denial of Johnson's motions for summary judgment and for sanctions, and remand for further proceedings.

"We review *de novo* a . . . grant of summary judgment, drawing all reasonable inferences in favor of the non-moving part[y]." *J. Walter Thompson, U.S.A., Inc.*

---

* The Honorable Sidney H. Stein, United States District Judge for the Southern District of New York, sitting by designation.

1. By consent of the parties, the case was referred to United States Magistrate Judge Hugh B. Scott to conduct all proceedings and order the entry of final judgment. *See* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73.

*v. First BankAmericano,* 518 F.3d 128, 136–37 (2d Cir.2008); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate when the moving party "demonstrate[s] that no genuine issue of material fact exists," *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir.2003) (internal quotation marks omitted), and "[a] dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party,'" *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1535 (2d Cir.1997) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ Under New York law, which applies in this diversity action, *see Kosmynka v. Polaris Indus., Inc.,* 462 F.3d 74, 79 (2d Cir.2006), "[a] landowner may be liable for injuries resulting from a dangerous condition on the property if the landowner created the dangerous condition or had actual or constructive notice of it." *Cook v. Sutton,* 254 A.D.2d 821, 821, 677 N.Y.S.2d 837 (4th Dep't 1998); *see also Bykofsky v. Waldbaum's Supermarkets, Inc.,* 210 A.D.2d 280, 281, 619 N.Y.S.2d 760 (2d Dep't 1994). Bon–Ton contends that no evidence of a dangerous condition existed, and even if it did, Bon–Ton neither created the dangerous condition nor had notice of it.

Bon–Ton first argues that it cannot be liable because there was no evidence of a dangerous condition. However, there is evidence that when the store escalator would break down, Bon–Ton gave its customers the option of either using the freight elevator, which was unattended, or walking down the other side of the escalator, which would be stopped for that purpose. An industry standard, promulgated by the American Society of Mechanical Engineers and accredited by the American

National Standards Institute (an "ASME/ANSI standard"), expressly states that "[f]reight elevators shall not be permitted to carry passengers." American Standard Safety Code for Elevators, Dumbwaiters, Escalators and Moving Walks A17.1–1965, Rule 207.4 (Am. Soc'y of Mech. Engineers 1965). Violating that standard by permitting customers on the freight elevator is evidence of negligence. *See Love v. New York City Housing Auth.,* 251 A.D.2d 553, 554, 674 N.Y.S.2d 750 (2d Dep't 1998) (stating that violation of a safety standard, such as an ASME/ANSI standard, is "some evidence of negligence"). At oral argument before this Court, counsel for Bon–Ton conceded that "the fact that [there] was a passenger on an exclusively freight elevator is evidence of negligence."

■ Bon–Ton next argues that even if a general dangerous condition existed with respect to customers' use of an unattended freight elevator, it had no notice of the specific dangerous condition—misleveling—that plaintiff cites as the cause of her injury. Bon–Ton asserts that it had no actual notice because no one had complained of that elevator misleveling before, and it had no constructive notice because Johnson testified that she did not see any misleveling before entering the elevator. *See Gordon v. Am. Museum of Natural History,* 67 N.Y.2d 836, 837, 501 N.Y.S.2d 646, 492 N.E.2d 774 (1986) (stating that constructive notice of a dangerous condition occurs when it is "visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it").

While Bon–Ton may certainly argue this point at trial, the evidence does not permit us to resolve this issue in its favor as a matter of law. Although "general awareness that a dangerous condition may be present is legally insufficient to constitute

notice of the particular condition that caused plaintiff's injuries," *Fetterly v. Golub Corp.,* 300 A.D.2d 1056, 1056, 752 N.Y.S.2d 471 (4th Dep't 2002) (internal quotation marks and alteration omitted), a jury could reasonably conclude that Bon–Ton's general notice reached to plaintiff's injury in this case. Evidence was adduced indicating that the inherent danger in having customers ride unattended freight elevators is that lay persons experience frequent difficulty safely operating such a mechanism. Bon–Ton was aware of more than ten instances of customers having difficulty using the freight elevator and even being trapped inside. The maintenance records of Schindler Elevator Company, which had an exclusive contract to maintain the freight elevator, are replete with service calls initiated by Bon–Ton employees. In these circumstances, we cannot conclude as a matter of law that no reasonable juror could find Bon–Ton liable simply because misleveling had not yet surfaced among the particular problems customers experienced when riding its unattended freight elevator. Certainly, misleveling is not an unforeseeable problem with elevators. *See, e.g., Oettinger v. Montgomery Kone, Inc.,* 34 A.D.3d 969, 824 N.Y.S.2d 447 (3d Dep't 2006). The extent to which it manifests itself in freight elevators as compared to other elevators is not an issue that we attempt to resolve on summary judgment. A reasonable juror could, in any event, conclude that because Bon–Ton knew that customer operation of freight elevators exposed them to a host of operational dangers that might be avoided, or at least more readily noticed and corrected if the mechanism were under the control of an attentive and experienced operator, it is necessarily liable for customer injuries arising out of such unattended operation. *See id.* at 970 (identifying question of fact for jury "whether the elevator's prior malfunctions

were directly or indirectly related to the accident" (internal quotation marks omitted)); *see also Landry v. Gen. Motors Corp.,* 210 A.D.2d 898, 898, 621 N.Y.S.2d 255 (4th Dep't 1994) (observing that violation of safety standards could be "considered as some evidence of negligence ... if the violation was a substantial factor in bringing about the occurrence"). In sum, a reasonable juror could find that Bon–Ton had notice of the dangerous condition because it knew of other problems with the elevator that could have contributed to, or even directly caused, the misleveling. *See Oettinger,* 34 A.D.3d at 969. A reasonable juror could also determine that the dangerous condition was "visible and apparent" and "exist[ed] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon,* 67 N.Y.2d at 837–38.

Accordingly, there is a genuine question of fact as to whether Bon–Ton was on actual or constructive notice that the elevator was in a dangerous condition, or whether Bon–Ton created that condition, and thus the district court erred in granting Bon–Ton's motion for summary judgment. For the same reason, the district court did not err in denying Johnson's cross-motion for summary judgment.

 We agree with the district court that the mandatory sanction provision of Rule 26(g)(3) does not apply to expert disclosures under Rule 26(a)(2). *See* Fed. R.Civ.P. 26(g)(1). If sanctions are not mandatory, a district court's decision to impose or decline to impose sanctions is reviewed for abuse of discretion. *See Int'l Telepassport Corp. v. USFI, Inc.,* 89 F.3d 82, 86 (2d Cir.1996); *see also In re Goldstein,* 430 F.3d 106, 111 (2d Cir.2005). Magistrate Judge Scott did not exceed his allowable discretion in not precluding Bon–Ton from asserting its defenses and in determining that cross-examination would

be a more appropriate method for discrediting the proffered expert witness than a sanction precluding defenses. *Johnson,* 2006 WL 2990352, at *6.

For the foregoing reasons, we RE-VERSE in part and AFFIRM in part the judgment of the district court, and RE-MAND for further proceedings.